Warren J. Stapleton, 018646
**OSBORN MALEDON, P.A.**
2929 North Central Avenue
21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
E-mail:wstapleton@omlaw.com

Proposed Attorneys for International Technical Coatings, Inc.

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>International Technical Coatings, Inc.,<br><br>Debtor. | Chapter 11 Proceeding<br><br>No. 2:bk-14709-MCW<br><br>**MOTION FOR INTERIM AND FINAL USE OF CASH COLLATERAL** |

International Technical Coatings, Inc., ("ITC") files this motion ("**Motion**") requesting that the Court enter an interim order authorizing them to use cash collateral, and to provide adequate protection as necessary to any creditor claiming a perfected security interest in the cash collateral. This Motion is further supported by the following Memorandum of Points and Authorities, by the *Declaration of Faruk Gole* filed concurrently herewith, and by the entire record before the Court.

DATED this 18th day of November, 2015.

OSBORN MALEDON, P.A.

By /s/ Warren J. Stapleton
Warren J. Stapleton
2929 North Central Avenue
21st Floor
Phoenix, Arizona 85012-2793
Proposed Attorneys for International
Technical Coatings, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **STATEMENT OF FACTS**

1. On November 18, 2015 (the "**Petition Date**") ITC filed a voluntary Chapter 11 bankruptcy petition in this Court. No Official Committee of Unsecured Creditors has been

1. appointed in their bankruptcy cases. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core matter pursuant to 28 U.S.C. § 157(b)(2).

2. ITC is steel wire manufacturing business with facilities located in Phoenix, Arizona and Columbus, Ohio. ITC's manufacturing facilities are located at 110 S. 41st Avenue, Phoenix, AZ 85009 (the "Phoenix Facility") and 845 Markison Avenue, Columbus OH, 43207 (the "Columbus Facility"). ITC's corporate headquarters is located at the Phoenix Facility. ITC currently employs approximately 233 employees.

3. ITC is the premier manufacturer of wire mesh products for the material handling and storage products industries. As one of the largest wire and steel fabricators in the United States, ITC manufactures a wide range of wire products including heavy and light duty wire mesh decking, dividers and flue spacers, gridwall/slatwall, POP displays, industrial and specialty drawn wire, custom wire and steel products, Patented Performance Panel, mine mesh, re-enforcing mesh, laser cutting, fencing and roll formed products. In addition, ITC offers value-added services such as product design and engineering to meet the needs of distributors, mass merchants, retailers, archive storage providers, OEM's and third-party logistics providers.

4. ITC's diverse customer base includes leading national chains such as Home Depot, Lowe's, Wal-Mart, IKEA, and a network of more than 2,500 distributors. With over 900,000 square feet of manufacturing and distribution facilities strategically located in both the Western and Eastern halves of the United States, ITC services the U.S., Mexico and Canada. All ITC products are manufactured in the U.S., assuring the highest quality standards available in the industry.

5. ITC's sole shareholder is Johnnie Caldwell ("Caldwell"). Previously, ITC had been owned 62% by Tommy Fisher ("Fisher") and 38% by Caldwell. Subsequently, Caldwell and Fisher negotiated a separation of Fisher from the business under which Caldwell bought Fisher's shares for approximately $6,000,000. In addition, Caldwell and ITC agreed to make certain additional payments to Fisher, and provide Fisher with certain financial information. The parties also exchanged mutual releases (the "Fisher Settlement Agreement").

6. On or about July 14, 2011, ITC borrowed approximately $28.3 million from Bank of America ("BofA" or the "Bank") pursuant to 3 different loans: Facility #1 ($20,000,000); Facility #2 ($5,000,000); Facility #3 ($3,300,000). In August 2012, ITC borrowed $15,000,000 from the Bank – the Facility #4 loan. In April 2014, ITC borrowed $10,690,000 from the Bank – the Facility#5 loan – which was used to pay off Facility #2 and Facility #4. Currently, ITC owes the Bank approximately $25.7 million.

7. The loans are secured by a deed of trust on the Phoenix Facility, a blanket lien on ITC's assets, and the personal guarantees of Caldwell and Fisher. The Bank's lien is the senior lien on virtually all of ITC's assets with the exception of certain equipment covered by a lien held by the Director of Development, State of Ohio – which relates to capital improvements to the Columbus Facility. In addition, there are several equipment lessors that have filed UCC-1s, including NMHG Financial Services ("NMHG"), Mitel Leasing, Inc. ("Mitel"), and U.S. Bank Equipment Finance ("US Bank").

8. The Facility #1 loan matured on August 15, 2015. Although ITC was current on all monthly payments due to the Bank on the loans – and continued to make monthly interest payments on the matured Facility #1 even after it matured – the Bank put ITC into default. ITC had anticipated that this loan would be restructured, or that an adequate amount of time for refinancing would be made available to ITC prior to the Bank taking any collection activity. The parties did attempt to negotiate a forbearance agreement but were unsuccessful.

9. Subsequently, on October 28, 2015, the Bank applied for the appointment of a receiver over ITC. The Maricopa County Superior Court (the "State Court") held an initial hearing on the matter on November 4, 2015. A final hearing on the appointment of a receiver was scheduled for Wednesday, November 18, 2015 at 1:30 p.m. Unable to secure an agreement with the Bank prior to the scheduled hearing, ITC filed for Chapter 11 protection.

### *Cash Collateral*.

10. ITC generates cash by selling its manufactured wire products and the services that go with those products. Currently, it has approximately $440,000 cash on hand. The Bank has a blanket lien on ITC's assets (primed only by the Director of Development, State of

Ohio's lien on certain personal property located at ITC's Columbus Facility). The Bank's lien covers ITC's accounts, contract rights, deposit accounts, inventory, machinery, furniture, fixtures, chattel paper, certificates of deposit, documents of title, and cash, and the cash that is derived from the Bank's collateral (ITC's cash on hand, and cash derived from the sale of the Bank's collateral is hereinafter referred to as the "Cash Collateral"). At this point, based upon the public records available, it appears only the Bank has a security interest in ITC's Cash Collateral.

11. *__Adequate Protection__*. To the extent that the Bank demonstrates an unavoidable perfected security interest in the Cash Collateral, then the Bank is entitled to adequate protection in exchange for ITC's use of the Cash Collateral. In this case, ITC proposes to provide a replacement lien ("**Replacement Lien**") to the Bank covering the Cash Collateral. The Replacement Lien will have the same priority and validity as the pre-petition lien as to which it relates, and will be capped at the value of the Cash Collateral as of the Petition Date. In addition, ITC will continue to pay the Bank the interest due on all credit facilities at the non-default rate of interest (1.35% + LIBOR). The payments by the Debtor shall be made in accordance with the attached budget. *See* Exh. A attached hereto.

## II. **RELIEF REQUESTED**

The Bankruptcy Code authorizes a debtor-in-possession to utilize another entity's cash collateral with authorization from the Bankruptcy Court, so long as the other entity's interest in the cash collateral is adequately protected. In this regard, 11 U.S.C § 363 as follows:

(c)(2) The trustee may not use, sell or lease cash collateral under paragraph (I) of this subsection unless -

(A) each entity that has an interest in such cash collateral consents; or

(B) the Court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(c)(3) Any hearing under paragraph (2)(b) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under Paragraph (2)(B) of this subsection is a preliminary hearing,

the Court may authorize such use, sale or lease only if there is a reasonable likelihood the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(8) of this subsection.

. . .

(e) Notwithstanding any other provision of this section, at any time, on request of an entity and has an interest in property use sold or leased, or proposed to be used, sold, or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

When adequate protection is required under §§ 362, 363, or 364 of this title, an interest of an entity and property, such adequate protection may be provided by

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under § 362 of this title, use, sale or lease under § 363 of this title, or any grant of a lien under § 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity and additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief other than entitling such entity to compensation allowable under § 503(b)(l) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

"Adequate protection" is a concept which is decided flexibly on a case-by-case basis. *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The test for whether creditor's security interest is adequately protected is whether creditor's interest is protected from diminution or decrease as result of proposed use of cash collateral. *In re Carbone Companies, Inc.*, 395 B.R. 631 (Bankr. N.D. Ohio 2008); *In re Quality Beverage Co., Inc.*, 181 B.R. 887, 896 (Bankr. S.D. Tex. 1995); *In re J.K.J. Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995). The primary function of providing a secured creditor with "adequate protection" is to protect its interest in cash

collateral when the debtor consumes cash. *In re Mach., Inc.*, 287 B.R. 755 (Bankr. E.D. Mo. 2002).

Pursuant to Code § 363, adequate protection may be provided by a replacement lien. *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1450 (9th Cir. 1985); *In re Swede/and Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re O'Connor*, 808 F.2d. 1393(10th Cir. 1987); *In re Cafeteria Operators, L.P.*, 299 B.R. 400 (Bankr. N.D. Tex. 2003); *In re LTV Steel Company, Inc.*, 274 B.R. 278 (Bankr. N.D. Ohio 2001); *In re McTyre Grading & Pipe, Inc.*, 180 B.R. 308 (Bankr. N.D. Ga. 1995); *In re Beeker Industries Corp.*, 58 B.R. 725 (Bankr. S.D.N.Y. 1986).

ITC proposes to provide adequate protection to the Bank by granting a Replacement Lien in the Post-Petition Cash Collateral. The Replacement Lien will have the same validity and priority as the secured creditor's pre-petition lien had. The granting of replacement liens on cash collateral is a common method of providing adequate protection. In addition, and as noted above, the Debtors will pay the Bank adequate protection payments equal to the pre-petition non-default interest due on the loan obligations. By granting the Replacement Lien and providing adequate protection payments, the Debtors will provide adequate protection so as to satisfy the requirement of the Bankruptcy Code. As such, their use of cash collateral should be authorized and approved. *In re Wrecclesham Grange, Inc.*, 221 B.R. 978, 981 (Bankr. N.D. Fla. 1997); and *In re Barkley AAA Investors, Ltd.*, 175 B.R. 755 (Bankr. D. Kan. 1994).

*NOTICE*

*No trustee, examiner, or creditors' committee has been appointed in these Cases. Notice of this Motion has been given to the Office of the United States Trustee, and to any party that could claim an interest in ITC's cash collateral. Because of the nature of the relief requested in this Motion, ITC submits that no other notice need be given.*

### III. CONCLUSION

WHEREFORE, ITC respectfully requests entry of an order granting the relief requested herein and such other relief as is just and proper.

DATED this 18th day of November, 2015.

OSBORN MALEDON, P.A.

By /s/ Warren J. Stapleton
Warren J. Stapleton
2929 North Central Avenue
21st Floor
Phoenix, Arizona 85012-2793
Proposed Attorneys for International
Technical Coatings, Inc.

COPY of the foregoing sent via U.S. Mail this 19th day of November, 2015.

| | |
|---|---|
| U.S. Trustee's Office<br>230 North First Avenue, #204<br>Phoenix, Arizona 85003-1706 | Robert J. Miller<br>Kyle S. Hirsch<br>Amanda L. Cartwright<br>Bryan Cave LLP<br>Two N Central Ave Ste 2200<br>Phoenix AZ 85004-4406<br>*Attorneys for Bank of America* |
| John J. Fries<br>Ryley Carlock & Applewhite<br>One N Central Ave Ste 1200<br>Phoenix, Arizona 85004-4417<br>*Attorneys for Tommy Fisher* | TATA International Metals (Americas) Ltd<br>475 N Martingale Rd Ste 400<br>Schaumburg IL 60173 |
| Performance Steel<br>817 S 7th St<br>Las Vegas NV 89101 | Ideal Welding Systems, LP<br>PO Box 6287<br>Rockford IL 61125 |
| C&F International Incorporated<br>16510 N Chase Dr<br>Houston TX 77060 | EVRAZ Rocky Mountain Steel<br>CF&I Steel<br>PO Box 845877<br>Dallas TX 75284 |
| King Steel Corporation<br>PO Box 72034<br>Cleveland OH 44192 | Minute Men Inc.<br>Dept 781648<br>PO Box 78000<br>Detroit MI 48278 |
| Roehrenbeck Electric, Inc.<br>2525 English Rd<br>Columbus OH 43207 | Pacesetter Finishing Systems, Inc.<br>1707 Mulberry Cir<br>Noblesville IN 46062 |
| Keystone Consolidated Industries<br>75 Remittance Dr Ste 3113<br>Chicago IL 60675 | Vitracoat America Inc.<br>2807 Marina Dr<br>Elkhart IN 46514 |
| Quinlan Law Firm<br>20 S Clark St Ste 2900<br>Chicago IL 60603 | Team Eagle Logistics, Inc.<br>1776 N Scottsdale Rd #11008<br>Scottsdale AZ 85271 |

| | | |
|---|---|---|
| 1 | | |
| 2 | Hope Timber Pallet and Recycling, Inc.<br>Po Box 502<br>Granville OH 43023 | Stream Logistics<br>6895 E Camelback Rd Ste 126<br>Scottsdale AZ 85251 |
| 3 | | |
| 4 | Integrated Logistic Services Inc<br>3500 Old Airport Rd<br>Wooster OH 44961 | Traxit LLC<br>PO Box 381465<br>Memphis TN 38183 |
| 5 | | |
| 6 | Eurolls SPA<br>Via Malignani<br>14-033040 | Gulf AZ Packing Corp.<br>PO Box 2420<br>Huntington Beach CA 92647 |
| 7 | Attimis, Udine, Italy | |
| 8 | Valley Plating Works<br>PO Box 911458 | |
| 9 | Los Angeles CA 90091 | |

Peggy L. Nieto
6389611